IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF PUERTO RICO

| | |
|---|---|
| ANGEL VÁZQUEZ RIVERA ET AL., | |
| Plaintiffs, | |
| v. | CIVIL NO.: 13-1949 (MEL) |
| UNIÓN DE TRONQUISTAS DE PUERTO RICO LOCAL 901, ET AL., | |
| Defendants. | |

## OPINION AND ORDER

### I.   PROCEDURAL HISTORY

On December 26, 2013, Angel Vázquez Rivera ("Vázquez Rivera") and his wife Rosa I. Nieves Vega ("Nieves"), and the conjugal partnership shared between them (collectively "plaintiffs") filed a complaint against Unión de Tronquistas de Puerto Rico Local 901 ("Local 901"), and Hoffa Medical Center Plan de Salud y Bienestar de la Unión de Tronquistas de PR ("Hoffa"), alleging that Local 901 and Hoffa did not notify plaintiffs of their rights under the Consolidated Omnibus Budget Reconciliation Act of 1985 ("COBRA"), 29 U.S.C. § 1001 *et seq*. ECF No. 1. Plaintiffs amended the complaint on May 16, 2014 to add Plan de Pensiones Unión de Tronquistas as a defendant. ("Pension Plan")[1] (ECF. No. 21) and again on June 26, 2014 "to correct some grammatical mistakes and to specifically allege that two defendants are plan administrators" (ECF No. 54). ECF No. 50. On December 15, 2014, Local 901 and Hoffa filed a motion for summary judgment arguing that plaintiffs' COBRA claim should be dismissed because their alleged failure to notify was not in bad faith and plaintiffs did not suffer prejudice

---

[1] Local 901, Hoffa, and Pension Plan are collectively referred to as the "defendants" in this opinion.

resulting from the alleged failure to notify. ECF No. 70. Defendant Pension Plan filed a motion to join their co-defendants' motion for summary judgment. ECF No. 73. Plaintiffs filed a response to defendants' motion for summary judgment on December 25, 2014. ECF. No. 74. For the reasons that follow, defendants' motion for summary judgment is granted.

## II.    UNCONTESTED FACTS

Vázquez Rivera was an employee of Local 901. ECF No. 60, at ¶ 4; ECF No. 65, at ¶ 4. He and his wife, Nieves, were beneficiaries of his group health plan. ECF No. 54, at ¶ 9; ECF No. 60, at ¶ [10].[2] On January 22, 2013, Vázquez Rivera was discharged from his employment with Local 901. ECF No. 74-2, at 1, ¶ 4. Since being discharged Vázquez Rivera has not had medical insurance through his employer, Hoffa, or any other insurer. ECF No. 74-2, at 1, ¶ 4. Nieves also did not have medical insurance beginning on the date of Vázquez Rivera's discharge until October 1, 2013, when she individually obtained a medical insurance plan. ECF No. 74-3, at 1, ¶ 5. From January 22, 2013, to December 24, 2014,[3] Vázquez Rivera did not visit or receive medical treatment from any doctor. ECF No. 71, ¶ 1; ECF No. 74-1, at 1, ¶ 1. However, Vázquez Rivera took some medications after June 2014.[4] ECF. No. 74-2, at 2, ¶ 8. At least once during this period of non-coverage, Vázquez Rivera unsuccessfully applied for medical insurance. ECF 74-1, at 3, ¶ 4. He had dental problems and joint and body pain that were not treated because he did not have medical insurance. ECF 74-1, at 3, ¶ 5. Nieves also had medical conditions that were not treated.[5] ECF 74-3, ¶ 3.

---

[2] Local 901's answer to plaintiffs' first amended complaint incorrectly numbered their paragraphs beginning with paragraph number "8." Every numbered paragraph and reference thereafter should be one integer greater than what was written. As such, Local 901 failed to answer plaintiff's eighth paragraph in the complaint.
[3] December 24, 2014, is the date plaintiffs' made their declarations under penalty of perjury to support their response in opposition to defendants' motion for summary judgment. ECF Nos 74-2, 74-3.
[4] Vázquez Rivera does not provide specific citations to the page numbers of any document detailing the nature or quantity of the medications he took.
[5] Besides the general description of "dental problems" and "joint and body pains" that Vázquez Rivera describes, plaintiffs do not specify in any detail what the nature or extent of their untreated medical conditions were. Plaintiffs

### III.   LEGAL STANDARD

The purpose of summary judgment "is to pierce the boilerplate of the pleadings and assay the parties' proof in order to determine whether trial is actually required." Wynne v. Tufts Univ. Sch. of Med., 976 F.2d 791, 794 (1st Cir. 1992). Summary judgment is granted when the record shows that "there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). "'A dispute is genuine if the evidence about the fact is such that a reasonable jury could resolve the point in the favor of the non-moving party. A fact is material if it has the potential of determining the outcome of the litigation.'" Farmers Ins. Exch. v. RNK, Inc., 632 F.3d 777, 782 (1st Cir. 2011) (quoting Rodríguez-Rivera-Martínez v. Federico Trilla Reg'l Hosp., 532 F.3d 28, 30 (1st Cir. 2008)).

The party moving for summary judgment bears the burden of showing the absence of a genuine issue of material fact. Celotex Corp. v. Catrett, 477 U.S. 317, 323 (1986). Once the movant presents a properly focused motion "averring 'an absence of evidence to support the nonmoving party's case[,]' [t]he burden then shifts to the nonmovant to establish the existence of at least one fact issue which is both 'genuine' and 'material.'" Griggs-Ryan v. Smith, 904 F.2d 112, 115 (1st Cir. 1990) (quoting Garside v. Osco Drug., Inc., 895 F.2d 46, 48 (1st Cir. 1990)). For issues where the nonmoving party bears the ultimate burden of proof, that party cannot merely "rely on the absence of competent evidence, but must affirmatively point to specific facts" in the record "that demonstrate the existence of an authentic dispute." McCarthy v. Nw. Airlines, Inc., 56 F.3d 313, 315 (1st Cir. 1995). The plaintiff need not, however, "rely on *uncontradicted* evidence . . . . So long as the plaintiff's evidence is both cognizable and sufficiently strong to support a verdict in her favor, the factfinder must be allowed to determine

---

also do not describe in any documents submitted to the court either the number or nature of procedures and medical treatment they forewent during the period when they were not insured. ECF. No 74-1, at 3, ¶ 5.

which version of the facts is most compelling." <u>Calero-Cerezo v. U.S. Dep't of Justice</u>, 355 F.3d 6, 19 (1st Cir. 2004) (emphasis in original).

In assessing a motion for summary judgment, the court "must view the entire record in the light most hospitable to the party opposing summary judgment, indulging all reasonable inferences in that party's favor." <u>Griggs-Ryan</u>, 904 F.2d at 115 (citations omitted). There is "no room for credibility determinations, no room for the measured weighing of conflicting evidence such as the trial process entails, [and] no room for the judge to superimpose his own ideas of probability and likelihood . . . ." <u>Greenburg v. P. R. Mar. Shipping Auth.</u>, 835 F.2d 932, 936 (1st Cir. 1987). The court may, however, safely ignore "conclusory allegations, improbable inferences, and unsupported speculation." <u>Medina-Muñoz v. R.J. Reynolds Tobacco Co.</u>, 896 F.2d 5, 8 (1st Cir. 1990) (citations omitted).

## IV.   LEGAL ANALYSIS

Where an employee participates in an employer's group health insurance plan, COBRA requires notice to employees and "qualified beneficiaries," including spouses and dependent children, of their option to continue health insurance coverage upon occurrence of a "qualifying event," including termination of employment. 29 U.S.C. §§ 1163(2), 1166(a)(2, 4), (b), (c). COBRA entitles qualified beneficiaries the option to continue receiving health insurance benefits for 18 months after the qualifying event. <u>Id.</u> § 1162(2)(A)(i). The notice requirement imposes a burden upon the employer to notify the plan administrator, if the administrator is a separate entity, of the occurrence of the qualifying event within 30 days of the event. 29 U.S.C. §1166(a)(2). The act then requires the plan administrator to notify the employee and qualified beneficiaries of their right to continued coverage under the plan within 14 days of the notice from the employer. 29 U.S.C. §1166(a)(4). If the employer and plan administrator are the same

entity, then the employer has 44 days from the date of the qualifying event to notify qualified beneficiaries of their right to coverage. 29 U.S.C. § 1166(a), (c); see also Rodríguez v. Int'l Coll. of Bus. & Tech., Inc., 364 F. Supp. 2d 40, 44-45 (D.P.R. 2005). Failure to notify a beneficiary of their rights under COBRA can make the plan administrator liable up to $110 per day in statutory penalties.[6] 29 U.S.C. § 1132(c)(1); see also Torres Negrón v. Ramallo Bros. Printing, Inc., 203 F.Supp.2d 120, 125 (D.P.R. 2002) ("[I]f a plan administrator fails to provide requisite COBRA notice, the court has discretion to find the administrator . . . liable to the participant . . . for up to $110 a day from the date of the failure until the date of correction."). In an action for COBRA remedies, "the medical plan administrator bears the burden of proving that adequate COBRA notification was provided to qualified beneficiaries." Rodríguez, 364 F. Supp. 2d at 46.

Neither side has brought evidence to the court's attention with citations to the summary judgment record regarding whether plaintiffs are qualified beneficiaries, whether a qualifying event transpired, which entity or entities were the plan administrator, or whether the plan administrator provided timely notice to plaintiffs.[7] Furthermore, no argument has been raised by plaintiffs or defendants as to any of these issues. Bearing in mind that defendants—the movants for summary judgment—bear the burden of establishing that COBRA notification was given, in the absence of any such evidence the court must operate under the presumption that defendants failed to provide proper notice for purposes of evaluating its summary judgment arguments.

The thrust of defendants' motion for summary judgment is that plaintiffs lack evidence that defendants acted in bad faith in failing to notify them of their COBRA and that the failure to

---

[6] The statute originally provided for damages up to $100 per day, but this amount was later amended upwards to $110 per day for violations occurring after July 29, 1997. 29 C.F.R. § 2575.502c–1.

[7] Plaintiffs aver that Local 901 was Vázquez Rivera's employer, that Hoffa and Pension Plan are "under common control and common management" with Local 901, and that the three entities "operate from the same location . . . [and] members of Local 901's Board of Directors . . . are trustees of Pension Plan and managers of Hoffa." ECF No. 54 at ¶¶ 4–6. They allege that Local 901 and Hoffa were the administrators of a group health plan in which Vázquez Rivera was a participant. Id. ¶ 9. In moving to join Local 901 and Hoffa's motion for summary judgment, Pension Plan does not offer any additional arguments for dismissal of plaintiffs' claims against it. See ECF No. 73.

notify has not resulted in any prejudice to plaintiffs. Plaintiffs counter that they did suffer prejudice. They also argue that a showing of prejudice is not required for the imposition of COBRA remedies and that lack of bad faith and lack of prejudice are affirmative defenses for which defendants have the ultimate burden of proof.

Courts have broad discretion regarding whether to award statutory penalties for violations of 29 U.S.C. § 1166(a)(1). Kerkhof v. MCI WorldCom, Inc., 282 F.3d 44, 56 (1st Cir. 2002) ("The penalty provision expressly leaves it 'in the court's discretion' to determine whether penalties are appropriate for a failure to disclose." (citing 29 U.S.C. § 1132(c)(1)). "[A]lthough the district court *need* not find bad faith or prejudice to impose penalties, it *may* give weight— even dispositive weight—to these factors in the exercise of its discretion.". Kerkhof, 282 F.3d 55–56 (rejecting argument that it was error for district court to require a showing of bad faith or prejudice and affirming decision not to impose penalties pursuant to § 1132(c)(1) in the absence of a showing of either harm to the plaintiff or bad faith on the part of the plan administrator (emphasis in original and citation omitted)); see also Rodríguez-Abreu v. Chase Manhattan Bank, N.A., 986 F.2d 580, 588–89 (1st Cir. 1993) (finding that the district court did not abuse its discretion by declining to impose penalties against the plan administrator in the absence of evidence of bad faith or harm to plaintiffs); Ortero Carrasquillo v. Pharmacia, 382 F.Supp.2d 300, 312 (D.P.R. 2006)); Boucher v. Williams, 13 F. Supp. 2d 84, 105 (D. Me. 1998) (opting not to assess statutory penalties because there was no proof of damages or bad faith). While plaintiffs are correct that bad faith and prejudice are not prerequisites for the imposition of penalties, defendants have correctly indicated that "[i]f the plan participant cannot show that he/she had been adversely affected in some *significant* fashion, the discretionary penalty allowed by the statute is rarely imposed." González Villanueva v. Warner Lambert, 339 F.Supp.2d 351, 359

(D.P.R. 2004) (emphasis added and citations omitted); Berrios-Cintrón v. Capitol Food, Inc., 497 F.Supp.2d 266, 271 (D.P.R. 2007) (citing Rodríguez-Abreu, 986 F.2d at 588–89; Kerkhof, 282 F.3d at 6); see also Gómez v. St. Vincent Health, Inc., 649 F.3d 583, 590-91 (7th Cir. 2011), as modified (Sept. 22, 2011) (affirming district court's decision to decline to award statutory penalties where plan participants were not "significantly prejudiced by the delay in notification."); Jordan v. Tyson Foods, Inc., 312 F. App'x 726, 736 (6th Cir. 2008) (affirming district court's decision to decline to award statutory penalties where counsel for the plan participant "was not able to articulate any appreciable harm" from the failure to provide notice). Furthermore, plaintiffs' assertion that lack of bad faith and lack of prejudice are affirmative defenses is inaccurate: it is incumbent upon plaintiffs to demonstrate that the imposition of penalties is warranted. Id.

Neither party has cited to evidence that sheds light on whether or not defendants acted in bad faith. Thus, the central inquiry is whether plaintiffs have suffered prejudice as a result of defendants' purported failure to notify them of their COBRA rights. To support their claim of prejudice, plaintiffs have submitted statements under penalty of perjury from Vázquez Rivera and Nieves, in which they state that their "access to medical services has been impaired" and that both Vázquez Rivera and Nieves "took medicines after June 2014." ECF No. 74-2, at ¶ 3, 8; ECF No. 74-3, at ¶ 3, 7. Their statements that they their access to medical services was "impaired" is vague and conclusory, shedding little light on whether they experienced any actual harm as a result of the alleged failure to notify. Taking as true that they each took medications after June 2014, they have not provided any indication of what type of medications they took, how much they paid for the medication, the quantity of such medications, or whether they would have been covered by their health insurance under COBRA. From their statements it is equally plausible

that they took over-the-counter medications or medications that they obtained while they had health insurance coverage, prior to Vázquez Rivera's termination. Nieves asserts in her declaration that that she has "medical conditions that could not be treated medically" during the period she was without insurance. ECF No. 74-3, ¶¶ 2-5. She includes no additional detail regarding these conditions, what type of treatment she might have obtained had she been notified of her right to continued coverage under COBRA, or whether she experienced harm or injury due to a delay in treatment and / or an aggravation of these conditions. Vázquez Rivera states that he had "dental problems and pains in the joints and body that [had] not [been] medically treated because [he] had no medical insurance." ECF No. 74-2, ¶ 6. This non-specific assertion also falls short of demonstrating that he experienced significant prejudice.[8] Compare Ferguson v. Vice–President of Human Res., 2001 WL 34070237, at *5 (S.D.Tex. Aug.13, 2001) (awarding statutory penalty where the plan participant went without health insurance from September 17, 1999, through December 1, 1999, at which time she was pregnant and incurring medical expenses.); O'Shea v. Childtime Childtime, Inc., No. 01-CV-1264(DRH), 2002 WL 31738936, at *7 (N.D.N.Y. Dec. 2, 2002) (awarding damages where during the period of uninsurance plan participant "was diagnosed with and treated three times for a gastrointestinal disorder"); with Fadalla v. Life Auto. Products, Inc., No. 206CV02679BBDTMP, 2009 WL 3295369, at *3 (W.D. Tenn. Oct. 13, 2009) (finding insufficient showing of prejudice to award statutory penalty where "[p]laintiffs presented proof that [plan participant] forwent an ear tube procedure due to lack of health insurance, but the only impact on [her] was the necessity for her to go on

---

[8] One form of potential prejudice from failure to notify a plan participant of their COBRA rights is enrollment in a health plan with higher premiums. See, e.g, Rodríguez v. Int'l Coll. of Bus. & Tech., Inc., 364 F. Supp. 2d 40, 49 (D.P.R. 2005). Nieves states: "The medical expenses related to me have come after October 1, 2013, when I could obtain medical insurance." ECF No. 74-3 ¶ 5. Although Nieves obtained coverage approximately nine months after the alleged qualifying event, plaintiffs do not argue that they suffered prejudice in the form of higher premiums. Furthermore, such a finding would be speculative, as they have not cited to evidence that the premiums of the health insurance plan in which she enrolled in October, 2013, were higher than the premiums of her former health plan.

antibiotics, which cause no physical impact on her."); see also Sonnichsen v. Aries Marine Corp., 673 F.Supp.2d 466, 473 (W.D.La. 2009) (declining to award a penalty because "on the basis of the entire record presented . . . plaintiff has not shown entitlement to a penalty. . . . [T]he Court finds plaintiff's allegations of prejudice unconvincing. Nowhere does plaintiff contend that he would have purchased coverage had he been properly notified under COBRA"); Miles–Hickman v. David Powers Homes, Inc., 589 F.Supp.2d 849, 880 (S.D.Tex. 2008) (denying penalties because "[a]s to prejudice" the plaintiff "fail[ed] to meet her burden" to show that the defendant's violation caused "a level of prejudice sufficient to warrant imposition of a penalty"). Vázquez Rivera fails to indicate whether he could have sought dental care under the medical plan that he had prior to losing his job and what medical treatment he would have sought for his "pains in the joints and body." While it is indeed possible that he experienced harm due to a lack of insurance coverage, such as an aggravation of his dental or joint problems due to delayed treatment or pain that could have been mitigated by prescription medications, such a finding would be speculative on the record. Taking into account the entirety of plaintiffs' claims in their declarations under penalty of perjury, they have not made a showing of prejudice that warrants the exercise of the court's discretion to impose statutory penalties on defendants.

## V. CONCLUSION

As previously noted, it is within the court's discretion to decline to award a statutory penalty pursuant to § 1166(a)(1) due to a lack of evidence of bad faith or prejudice. See Kerkhof, 282 F.3d at 56; Rodríguez-Abreu, 986 F.2d at 588–89. Although bad faith and prejudice are not necessary preconditions to an award of a statutory penalty under COBRA, plaintiffs have offered no reason for the court to depart from the norm and penalize defendants in the absence of such a showing. Considering that plaintiffs have not adduced evidence that defendants acted in bad faith

or that they experienced any appreciable harm or prejudice, defendants' motion for summary judgment (ECF No. 70) is **GRANTED**.

**IT IS SO ORDERED.**

In San Juan, Puerto Rico, this 30th day of July, 2015.

<u>s/Marcos E. López</u>
U.S. Magistrate Judge